IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

REGIS GRICE,

                Plaintiff,

v.

TAPIO, *et al*.,

                Defendants.

ORDER

18-cv-923-slc

---

Pro se plaintiff Regis Grice, a prisoner at Waupun Correctional Institution, is proceeding against defendants Tapio and Marchant on Eighth Amendment deliberate indifference and state negligence claims related to alleged delays and mishandling of his degenerative hip condition. On August 7, 2019, I denied Grice's motion for reconsideration of the leave-to-proceed order because it was too vague. *See* dkt. 29. Grice has followed up by filing several requests to amend his complaint, along with his proposed second amended complaint. (Dkt. 30, 31, 33, 35.) For good measure, Grice has filed a motion to compel discovery related to the claims that he is seeking to add to this lawsuit but have not yet been added. (Dkt. 32.)

I am granting Grice's motions to amend his complaint and I will allow him to proceed on Eighth Amendment and Wisconsin negligence claims against all but one defendant, as explained below:

ALLEGATIONS OF FACT

Grice now seeks leave to proceed against Marchant, Dr. Jeanpierre, and special needs committee members B. Dittman, Kuepper, Frame, Deblanc, Tritt, and Larson based on their involvement either in responding to Grice's complaints about pain or in denying his requests for a medical mattress between November 2018 and July of 2019.

## I. Summary of Allegations from First Amended Complaint

Grice's amended complaint repeats the majority of the allegations from his amended complaint related to his hip pain between March and November of 2018, so I will incorporate by reference those allegations from the leave to proceed order (dkt. 12, at 1-4), and summarize those allegations for context: Between March and September 2018, Grice was complaining constantly to the HSU about pain related to his hip condition. Grice's pain medication changed multiple times because he reported that it was ineffective for his pain; Grice experienced a delay in starting his physical therapy; when Grice actually started physical therapy, it was too painful for him; and, Grice was unable to get a supportive pillow that he had requested from NP Tapio.

As of November 28, 2018, when Grice's new allegations start, Grice had starting taking duluxetine for his pain; Grice was waiting for an orthopedic consult to discuss his pain medication and undergo an MRI; and Marchant had assured Grice that those appointments were scheduled and would take place within two months. Grice's additional allegations relate to his continued attempts to be seen by a doctor to discuss his pain medication, and the special needs committee's denial of a second mattress.

## II. Requests to be Seen in the HSU

On November 28, 2019, Grice submitted an Information Request, repeating his complaints about pain. On November 30, RN Jensen responded that Grice was scheduled to see a doctor after the MRI and orthopedic consult, which would take place within six weeks. Jensen also wrote that she would forward Grice's note to Dr. Jeanpierre. On December 1, 2018, Grice submitted a Health Service Request (HSR), asking to see his doctor to discuss a better pain

2

medication, reporting that his hip was so tender that he could not lay down, walk, or sit up. Grice reported that he had requested an extra mattress, but hadn't heard back.

On December 4, 2018, Grice wrote to the HSU manager, complaining that when he went to the HSU asking for different pain medications, he never got to see an actual doctor. On December 6, someone from the HSU – it appears to have been a nurse – responded that s/he had reviewed Grice's record and had moved up his appointment to see a doctor. Dkt. 31-1 at 5. On December 9, Grice submitted another HSR, repeating that he wanted to be seen for his pain, adding that he did not want to refill his current prescription because the medication wasn't working. Grice submitted a similar HSR on December 12; the records show that on December 14, RN Jensen noted that Dr. Jeanpierre had seen Grice on December 13. *Id.* at 8. On December 13, Grice submitted another Information Request to the HSU manager, writing that while he was thankful he had been seen, he felt it was inappropriate that he had to wait for three weeks.

On January 8, 2019, Grice underwent an x-ray at Agnesian Healthcare, and the radiology report noted severe degenerative arthritis in Grice's left hip joint. That same day, Grice also met with a physician, Dr. Eric Nelson, who concluded that Grice's severe degenerative hip condition presented "a difficult case without any type of straightforward solution," noting that because Grice was so young, he was not a candidate for consideration of joint replacement surgery. Dkt. 31-1 at 18-19. Dr. Nelson recommended that the DOC schedule Grice for an injection, which would help manage his pain; if that did not work, then Grice should see a tertiary level hip specialist at the University of Wisconsin. *Id.* at 19.

On January 31, 2019, Grice submitted an information request to Dr. Jeanpierre, complaining about not being seen for his pain, and reporting that a nurse had met with him and said he would get Grice a single cell and put a note in the computer that a doctor needed to see him ASAP. RN Jensen responded to that request, writing that Dr. Jeanpierre cancelled a nurse's order to see Grice, that his request for a medical mattress had been denied, and that there was no order for a single cell.

Most recently, it appears that some time before May 16, 2019, Grice was sent to the orthopedics department at University of Wisconsin, and received a recommendation for a total hip replacement. Dkt. 31-1 at 31. After that recommendation, Tapio requested that Dr. Jeanpierre opine about the appropriateness of the surgery and made arrangements for the authorization and rehabilitation.

On June 10, 2019, Grice met with Dr. Jeanpierre, who discussed pain management with Grice. Dr. Jeanpierre told Grice that gapabentin would be inappropriate for him; instead she increased Grice's NSAID doses. On July 15, 2019, Grice wrote to the HSU manager, asking again for new medications and for his surgery to be moved up because of his pain. An HSU staff member responded on July 16, that he would be scheduled with an ACP while he was awaiting surgery. Grice was seen by an ACP within a few days of that response.

On July 20, 2019, Grice submitted an Information Request, explaining that he had been seen by an ACP but forgot to inquire about when he would be undergoing surgery. On July 23, 2019, an HSU staff member responded that Grice's surgery was in the process of being scheduled. The next day, Grice wrote to Marchant, complaining that he was still waiting for new medication that Dr. Jeanpierre said she would prescribe, and that he continued to be in severe

4

pain. Grice received a response on July 26, 2019, that his file was reviewed and his Salsalate was sent out on July 25. On July 29, 2019, Grice submitted another information request, thanking the ACP for providing new medication, cane, medical mattress, and ice. He also asked about when he was scheduled for surgery. As of August 8, 2019, Grice claims that he still has not been schedule for surgery.

### III. Special Needs Committee Request

On November 20, 2018, Grice submitted an HSR, to the Special Needs Committee (SNC), and asking for an extra mattress and/or a medical mattress. It appears that on November 29, 2018, SNC—comprised of Kueppers, Frame, Deblanc, Captain Tritt, Marchant, and Larsen—denied Grice's request because his needs did not meet the requirements of Policy and Procedure 300.07 for obtaining an extra mattress or a medical mattress.

On December 10, 2018, Grice submitted an inmate complaint about that denial. On December 12, 2018, Marchant recommended that the inmate complaint examiner (ICE) deny the complaint, writing that Grice had pain medication, participating in physical therapy, and had an upcoming orthopedic consult. On review, B. Dittman credited Marchant's recommendation and dismissed the complaint. On January 6, 2019, Grice submitted an HSR, requesting reconsideration of the medical mattress decision. On January 8, 2019, the SNC denied Grice's request, citing to Policy and Procedure 300.07.

On January 13, 2019, Grice submitted another HSR requesting a single medical handicap cell as well as a medical mattress. On January 17, an HSU staff member responded that his

5

request had been forwarded to the Single Cell Committee, and referred him to a January 17, 2019, memorandum from the SNC denying his request for a medical mattress.

On January 24, 2019, Grice wrote to the HSU manager about his hip issues, reporting that he still wanted a medical mattress, was having trouble getting his medication, and that the orthopedic specialist had recommended he get injections to address his pain. On February 14, 2019, Grice wrote to the SNC, again requesting a medical mattress and single cell, referring to the notes from his orthopedic consult. On March 7, 2019, the SNC approved Grice for two mattresses.

OPINION

Grice seeks to add to this lawsuit claims under the Eighth Amendment and Wisconsin law related to the events between November 2018 to the present, against Marchant, Dr. Jeanpierre, Kueppers, Frame, Deblanc, Tritt, Larson, and B. Dittman.[1]

A prison official violates the Eighth Amendment in the context of a prisoner's medical treatment if s/he demonstrates "deliberate indifference" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). "Serious medical needs" include (1) life-threatening conditions or those carrying a risk of permanent serious impairment if left untreated, (2) withholding of medical care that results in needless pain and suffering, or (3) conditions that have been "diagnosed by a physician as mandating treatment." *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997). "Deliberate indifference" encompasses two elements: (1) awareness on the part of officials that the prisoner

---

[1] This time frame raises the question whether Grice has exhausted his administrative remedies on all of his new allegations, but that is not today's concern.

needs medical treatment and (2) disregard of this risk by conscious failure to take reasonable measures. Grice's allegations by themselves demonstrate that he received quite a bit of care and attention from a large number DOC employees and committees, but as noted in my March 14, 2019 order (dkt. 12 at 1, n.1.) the court must read Grice's allegations generously and in his favor at the leave-to-proceed stage. So, here we go:

Starting with Marchant, Grice already has received leave to proceed against her with respect to her September 27 and November 21 responses to Grice's Information Requests. I will also allow Grice to proceed against Marchant for her December 12, 2018, recommendation that the ICE deny Grice's inmate complaint about his denied request for a medical mattress. Marchant remarked that the denial was appropriate because Grice was receiving pain medication, participating in physical therapy, and had an orthopedic consult scheduled in the weeks leading up to his inmate complaint. All of this was accurate. But Grice was complaining to the HSU that the attention he was receiving *still* was not enough: his medications were not working and he was unable to participate in physical therapy because it was too painful. At the leave to proceed stage, it is not unreasonable to infer that Marchant either did not adequately investigate Grice's complaint or she was aware of but indifferent to his ongoing pain and discomfort. This is enough to allow this claim to proceed past screening.

However, consistent with the my previous order (*see* dkt. 12, at 8), I will not grant Grice leave to proceed against Marchant with respect to the Information Requests he directed to the "HSU manager." While Marchant holds that position, Grice has not alleged that Marchant actually reviewed or responded to any of these requests, while the record shows that other HSU staff members responded. Therefore, it would be unreasonable to infer that Marchant was

7

personally involved in handling those requests. *See Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) ("a supervising prison official cannot incur § 1983 liability unless that officer is shown to be personally responsible for a deprivation of a constitutional right).

As for Dr. Jeanpierre, I previously denied Grice leave to proceed against her because he alleged simply that she had changed Grice's medication. Grice now has upped the ante, claiming that in January of 2019, Dr. Jeanpierre cancelled an appointment to see Grice for his pain management concerns, and that after their June 2019 appointment, Dr. Jeanpierre failed to follow up to adjust Grice's pain medication. While discovery is bound to reveal more about Dr. Jeanpierre's decision-making process, Grice's allegations suffice at the screening stage to allow a reasonable inference that Dr. Jeanpierre failed to exercise medical judgment when she refused to see Grice and did not adjust his medications as promised.

Next, I will allow Grice to proceed against SNC members Kuepper, Frame, Deblanc, Tritt, and Larson. The committee allegedly denied Grice a medical mattress on three separate occasions (November 29, 2018, January 8, 2019, and January 17, 2019), despite his reports to the HSU about his pain and problems sleeping and moving around. Given the severity of Grice's pain, Dr. Nelson's comments about the severity of Grice's hip condition, the recommendation that Grice undergo hip replacement surgery, and their eventual decision to allow him a second mattress, it is reasonable to infer that the committee members' three denials did not involve an adequate assessment of his need for a more supportive mattress.

I am denying Grice leave to proceed against B. Dittman, who denied Grice's inmate complaint complaining about the SNC's denial of his request for a medical mattress. Dittman, as the reviewer of Grice's inmate complaint, was entitled to defer to Marchant's

8

recommendation, which noted that Grice was receiving treatment and did not meet the regulatory qualifications for a medical mattress. *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006) (non-medical prison officials are not deliberately indifferent under the Eighth Amendment if they investigate inmate complaints and find that medical staff is monitoring inmate's condition).

Finally, Grice may proceed against Marchant, Dr. Jeanpierre, Kuepper, Frame, Deblanc, Tritt, and Larson on his state medical negligence claims, involving the same allegations on which his Eighth Amendment claims are proceeding. *See* 28 U.S.C. § 1367(a) ("[D]istrict courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). Under Wisconsin law, the elements of a negligence claim are: (1) a duty of care or a voluntary assumption of a duty on the part of the defendant; (2) a breach of the duty, which involves a failure to exercise ordinary care in making a representation or in ascertaining the facts; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 307 (1987). Grice's allegations support a reasonable inference that each of these defendants breached a duty of care, worsened his pain, and possibly worsened his overall condition.

Because I am dismissing the federal claims against B. Dittman, I am declining to exercise supplemental jurisdiction over plaintiff's proposed state law claims against them. 28 U.S.C. §1367(c)(3); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015).

MOTION TO COMPEL DISCOVERY

I am denying Grice's motion to compel discovery. First, Grice should not have filed his discovery requests with the court, he should have served them on the defendants' attorney, as required by the Federal Rules of Civil Procedure. Second, Grice jumped the gun: these discovery requests relate to the new claims that he has raised in his second amended complaint. Until the court grants leave to proceed on these claims, they are not part of this lawsuit and Grice may not seek discovery on them. So, as of September 30, 2019, such information is fair game for discovery. Going forward, Grice should NOT file his discovery requests with the court, he should send them directly to the assistant attorney general assigned to defend this lawsuit.

ORDER

IT IS ORDERED THAT:

1) Plaintiff Regis Grice's motions seeking to amend (dkt. 30, 33, 35) are GRANTED.

2) Plaintiff may proceed on Eighth Amendment deliberate indifference and Wisconsin negligence claims against defendants Dr. Jeanpierre, Marchant, Kuepper, Frame, Deblanc, Tritt, and Larson, as provided above.

3) Plaintiff is DENIED leave to proceed against B. Dittman, who is DISMISSED.

4) Plaintiff's motion to compel (dkt. 32) is DENIED without prejudice.

5) Not later than October 21, 2019, the Attorney General's Office must notify the court whether it will accept service of process for defendants Dr. Jeanpierre, Kuepper, Frame, Deblanc, Tritt, and Larson.

Entered this 30th day of September, 2019.

BY THE COURT:

/s/
STEPHEN L. CROCKER
Magistrate Judge